IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Larry A. White, | ) | |
| | ) | C/A No. 9:24-cv-06119-JDA-MHC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Shane Jackson, Curtis Earley, Susan Duffy, | ) | |
| Victoria Cloud, Ms. Watts, & SCDC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se and in forma pauperis, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. ECF No. 1. Before the Court is a Motion for Summary Judgment ("Motion") filed by Shane Jackson, Curtis Earley, Susan Duffy, Victoria Cloud, Ms. Watts, and SCDC ("Defendants"). ECF No. 36. After the Court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedures and the possible consequences if he failed to adequately respond to the Motion, ECF No. 37, Plaintiff filed a Response in Opposition. ECF Nos. 43; 46. Defendants replied. ECF No. 44. After being granted leave of the Court, ECF No. 49, Plaintiff filed a Sur-Reply. ECF No. 51. The Motion is ripe for review.

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2), (D.S.C.). This Report and Recommendation is entered for review by the District Judge. For the reasons that follow, the undersigned recommends that the Motion be granted.

1

## BACKGROUND[1]

Plaintiff is an inmate in the custody of the South Carolina Department of Corrections ("SCDC"). *See* ECF No. 36-4 at 2, ¶ 1. Plaintiff filed his verified Complaint on October 25, 2024. ECF No. 1. In his verified Complaint, Plaintiff attests that he was transferred to Perry Correctional Institution ("PCI") on April 12, 2022. *Id.* ¶ 8. He was placed in the Restrictive Housing Unit ("RHU") on or about April 25, 2022. *Id.* He began complaining about the portions of food being served to the inmates on May 11, 2022. *Id.* Plaintiff made his complaints, including that "[a]t times the portions were small and food sometimes is not properly cooked," to Defendants Duffy, Cloud, and Earley. *Id.*

Plaintiff was transferred to Lee Correctional Institution ("LCI") on June 9, 2023. *Id.* ¶ 9. While at LCI, Plaintiff experienced the same issues with the portions and temperature of his food. *Id.* Though he complained to Defendant Jackson, the problem was not resolved. *Id.*

Plaintiff was transferred back to PCI on April 19, 2024. *Id.* ¶ 10. Plaintiff still faces the same issues and has complained to Defendants Earley, Duffy, and Watts, but nothing has changed regarding how the inmates are fed, and some inmates have even found dead bugs in their food. *Id.* Plaintiff attests that he faces hunger pains, depression, headaches, loss of energy, and suicidal

---

[1] The facts and evidence are construed in the light most favorable to Plaintiff, as the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A pro se litigant's verified complaint or other verified submission must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (noting a verified complaint is "the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge"). In addition to his verified Complaint, Plaintiff submitted a declaration, ECF No. 43-2 at 13, as well as declarations from other inmates supporting his version of events, *id.* at 14–22. The bulk of the remaining evidence includes Plaintiff's grievance requests, *id.* at 1–2, 9–12, 23–87; ECF No. 46 at 1, as well as the affidavit of Felecia McKie and corresponding exhibits, ECF No. 36-4, and the affidavit of Ryshema Davis, ECF No. 36-5.

thoughts because of being underfed. *Id.*

## LEGAL STANDARD

Defendants move for summary judgment on Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 36. Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Id.* at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324.

Under this standard, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson*, 477 U.S. at 255. However, although the Court views all the underlying facts and inferences in the record in the light most favorable to the non-moving party, the non-moving "party nonetheless must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson*, 477 U.S. at 256). That is to say, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). This "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (citation omitted); *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (noting "we are obliged to construe [a complaint's] allegations liberally and with the intent of doing justice"). However, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact when none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

### DISCUSSION

Pursuant to 42 U.S.C. § 1983, Plaintiff brings claims against Defendants for cruel and unusual punishment and deliberate indifference under the Eighth Amendment. ECF No. 1 at 1–2, ¶¶ 1–12. He is suing the individual Defendants in their individual capacities only.[2] *Id.* Plaintiff

---

[2] In response to Defendants' arguments for dismissal of Plaintiff's official capacity claims, Plaintiff reiterates this position in his Sur-Reply. ECF No. 51 at 2 (citing ECF No. 1 at ¶¶ 3–7); *see also* ECF No. 43-1 at 3 ("Plaintiff made no claims against the Defendants in their official capacities.").

seeks monetary damages, specifically $100,000 in compensatory damages and $50,000 in punitive damages from each Defendant. *Id.* at 2. Defendants move for dismissal of Plaintiff's Complaint in full based on (1) Plaintiff's failure to exhaust his administrative remedies for nearly all his claims; (2) Plaintiff's failure to establish an Eighth Amendment violation; (3) Defendants' qualified immunity protection; and (4) Plaintiff's failure to prove sufficient injury to obtain damages under the Prison Litigation Reform Act ("PLRA"). ECF No. 36-1 at 5–21.

For the reasons set forth below, the undersigned recommends that Defendants' Motion be granted.

## I.     Merits of Plaintiff's Eighth Amendment Claims

To establish a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that Defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001). At the summary judgment stage, Plaintiff must show Defendants' personal involvement in the alleged violation of Plaintiff's constitutional rights for liability to attach. *See Williamson*, 912 F.3d at 171–72 (noting a plaintiff must affirmatively show that the official acted personally in violating the plaintiff's constitutional rights and finding certain defendants were entitled to summary judgment because "they lacked sufficient personal involvement in the alleged constitutional deprivations"); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (noting liability will lie in § 1983 actions only where it is "affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights" (citation omitted)).

Plaintiff claims that the inadequate meals he received at PCI and LCI violated his Eighth Amendment rights because they constituted cruel and unusual punishment and deliberate indifference "to the way Plaintiff has/is being fed." ECF No. 1 at ¶¶ 11–12. Defendants argue that

Plaintiff cannot show any such claim. ECF No. 36-1 at 9–16.

To demonstrate a violation of the Eighth Amendment based on conditions of confinement, including complaints regarding food, against defendants in their individual capacities, a plaintiff must establish (1) a serious deprivation of a basic human need and (2) deliberate indifference to prison conditions on the part of the defendants. *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991); *see also Wilson v. Seiter*, 501 U.S. 294, 296–304 (1991). These two elements are often viewed as the objective and subject components, respectively. Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 1993). "[A]llegations of inadequate food for human nutritional needs or unsanitary food service facilities are sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need." *King v. Lewis*, 358 F. App'x 459, 460 (4th Cir. 2009) (internal citations omitted) (citing *Bolding v. Holshouser*, 575 F.2d 461, 465 (4th Cir. 1978)).[3]

### A. Objective Component: Deprivations Not Sufficiently Serious

Viewing the evidence in the light most favorable to Plaintiff, he has not shown that the violations of which he complains, including insufficient portions, improperly prepared meals, and occasional unsanitary food conditions, constitute sufficiently serious punishment.

The Fourth Circuit recognizes the well-established principle that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present

---

[3] Plaintiff relies on *King* to support his claims. *See, e.g.*, ECF Nos. 43-1 at 2; 51 at 1–2. However, that case was decided at a much different posture. Specifically, the court in *King* was reviewing whether the plaintiff had sufficiently stated a claim that could survive initial review. *See* 358 F. App'x at 460. But here, the Rule 56 standard under which Plaintiff's claims are evaluated is decidedly different. Though cases at different postures are still illustrative, they are not necessarily comparable in all respects.

an immediate danger to the health and well being of the inmates who consume it.'" *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted); *see Bolding*, 575 F.2d at 465 (prisoner's allegation of failure to provide adequate sanitary food service facilities stated a cognizable claim). Failure to meet an inmate's basic nutritional needs can constitute cruel and unusual punishment because the inmate relies on prison officials to provide food; if the officials fail to do so, the inmate's basic nutritional needs will not be met. *Cf. Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) ("[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."); *Islam v. Jackson*, 782 F. Supp. 1111, 1114–15 (E.D. Va. 1992) (finding plaintiff's allegations of contaminated food on one occasion and food being served from unsanitary conditions for thirteen days were not sufficiently serious and plaintiff also failed to allege any serious or emotional deteriorations attributable to the challenged conditions). Under some circumstances, therefore, inadequate, unsanitary food service can be sufficiently serious to satisfy the objective element of an Eighth Amendment claim. Here, however, Plaintiff's claims do not meet the threshold required to establish a violation of constitutional magnitude.

1. Character of Complaints

Plaintiff's complaints pertain to the portion size, temperature, and cleanliness of the food he was served. ECF No. 1 at ¶¶ 8–10.

    i. *Portion Size*

Plaintiff's specific statements regarding the portions at SCDC institutions are that "[a]t times[,] the portions were small." *Id.* ¶ 8. He also attests that "[p]ortions are inadequate." *Id.* ¶ 10; *see also* ECF No. 43-2 at 13. He gives an example, stating: "sometimes for dinner we have BBQ

turkey ham. The menu says that the turkey ham itself weighs 4 ounces. If you look at the thin piece of bolo[gna] that we are served, there is no way that it weighs 112 grams." *Id.*

Other inmates have provided similar declarations, indicating that the meals "are small portions," "at any given meal[,] we are not being served the correct portions of food we are supposed to get;" "[s]ome meals are simply cruel and unus[u]al at times;" "[t]he meals that I have received are small portioned;" "each meal either small or the portions are way smaller;" "it's always a problem we are still hungry after we eat;" "the portions of food that we receive are small;" "the Ammount [sic] of food we get Are small portions and we still hungry After we eat;" and "the meals that I've received have been small, cold, and very untolerable [sic]." *Id.* at 14–22.

Defendants provided the affidavit of Ryshema Davis, a nutritionist with SCDC.[4] ECF No. 36-5 at 2, ¶ 2. Davis highlights SCDC policies that "recognize[] the importance of proper nutrition to maintain the health and well-being of inmates and mandate[] that the food served to inmates is in keeping with all applicable state and federal statutes, Department of Agriculture Regulations, and the 'Recommended Dietary Allowances' (RDAs) as defined by the National Academy of Sciences, National Research Council." *Id.* ¶ 4.

Davis indicates periodic inspections are conducted by SCDC to ensure sanitary and hygienic conditions. *Id.* ¶ 5. Davis prepares SCDC Master Menus and Cook's Worksheets from which meals served at each SCDC institution will be prepared. *Id.* ¶ 7. These menus created by

---

[4] In his sworn declaration, Plaintiff objects to the accuracy of this affidavit, contending that Ryshema Davis does not have sufficient personal knowledge to make the sworn attestations. ECF No. 43-2 at 13. The undersigned disagrees. As a nutritionist at SCDC, Davis has personal knowledge of the policy guidelines and practices of which she attests. Her affidavit does not purport to attest to the exact presentation of certain food items on certain days or times; instead, she reports the general practical guidelines to which all SCDC operations are expected to adhere. Particularly in the absence of evidence to the contrary, Plaintiff has failed to demonstrate a genuine dispute of material fact as to Davis' personal knowledge or lack thereof.

Food Services provide the necessary RDAs for inmates, and food is ordered so that adequate ingredients, portions, and calories can be provided to each inmate. *Id.* ¶ 9.

Though Plaintiff attests that he found the portions given to be insufficient, leading him to be underfed and experience hunger pains, headaches, loss of energy, depression, and thoughts of suicide, ECF No. 1 at ¶ 10, he has not set forth sufficient evidence to establish that any such portions were constitutionally deficient.

Plaintiff's assertions, along with those of his fellow inmates, indicate their dissatisfaction with the portion sizes given and contentions that the portions were insufficient. However, these assertions are conclusory, and there has been no evidence provided to the Court to support that these meals were, in fact, nutritionally deficient. *See Thompson*, 312 F.3d at 649. On the contrary, the evidence before the Court suggests that meals supplied at SCDC facilities comply with the recommended nutritional guidance. *See* ECF No. 36-5 at ¶ 9. Though Plaintiff contends that the actual meals given in practice are different from those supplied by the overhead and "the master menu is not being followed," ECF No. 43-1 at 5, he has not supplied any *evidence* that contradicts the concrete facts before the Court or supports his assertions. In fact, even in the grievances he has supplied, many of the responses from staff reiterate that they are complying with SCDC policy and regulations with respect to the portions served. *See, e.g.*, ECF No. 43-2 at 28–31, 33–67.

"Mere dissatisfaction with the variety, portion size or savor of his prison diet is not sufficient to state a claim." *Escalante v. Huffman*, No. 7:10-CV-00211, 2011 WL 3107751, at *9 (W.D. Va. July 26, 2011), *report and recommendation adopted*, No. 7:10-CV-00211, 2011 WL 3584992 (W.D. Va. Aug. 15, 2011); *see also Scinto v. Stansberry*, 841 F.3d 219, 234 (4th Cir. 2016) ("Only an 'extreme deprivation' is actionable under the Eighth Amendment."); *McFadden v. Lowicki*, No. CV ELH-18-469, 2018 WL 5242264, at *9 (D. Md. Oct. 22, 2018) ("Missing a

meal on a few isolated occasions does not constitute an Eighth Amendment violation where the meals the prisoner is provided are sufficient to maintain normal health." (collecting cases)). Plaintiff has not provided any evidence to support that the portions provided are insufficient to maintain normal health.[5]

     *ii.    Temperature*

Plaintiff also attests that the "food sometimes is not properly cooked" and is always served cold. ECF No. 1 at ¶¶ 8–10; *see also* ECF No. 43-2 at 22. These complaints do not give rise to constitutional violations.

As to the food typically being served cold, "although the Fourth Circuit has not addressed the issue of whether the service of cold food to an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment, numerous other courts have held that it simply does not." *Couch v. Jabe*, 479 F. Supp. 2d 569, 588 (W.D. Va. 2006). "The Constitution does not guarantee, . . . food that is prepared and served in a culinarily-pleasing manner." *Kemp v. Drago*, No. CA 1:12-1481-JFA-SVH, 2013 WL 4874972, at *9 (D.S.C. Sep. 11, 2013), *aff'd*, 558 F. App'x 328 (4th Cir. 2014); *see also Williams v. Berge,* No. 04–1348, 2004 WL 1435200, at *1 (7th Cir. June 24, 2004) (unpublished) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]" (internal citations omitted)); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").

Regarding whether food is properly cooked, the evidence supports that SCDC requires foods to reach certain temperatures. Specifically, "all recipes distributed to SCDC Correctional Institutions include instructions on how long to cook each food item and require temperature

---

[5] *See also infra* Section I.A.2.

checks to ensure food is properly cooked and safe to consume." ECF No. 36-5 at ¶ 10. All warm foods are temperature checked before being served and must measure at least 135 degrees Fahrenheit before being placed on the service line. *Id.* ¶ 11.

Though Plaintiff has indicated food was "not properly cooked," this assertion is another conclusory allegation that Plaintiff has not supported with any concrete evidence or examples. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875–76 (4th Cir. 1992) (noting, in summary judgment proceedings, that the nonmoving party must show a genuine issue for trial, and though "this does not require the non-moving party to submit evidence in a form that would be admissible at trial, '[u]nsupported speculation is not sufficient to defeat a summary judgment motion'" (internal citations omitted) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987))). Plaintiff has not presented any evidence demonstrating that the food served presented any immediate danger to his or the other inmates' health and well-being, beyond his speculation of such harm. *See Shrader*, 761 F.2d at 986; *see also Marshall v. Bazzle*, No. CA 4:08-CV-2775-GRA, 2009 WL 2858999, at *5–7 (D.S.C. Aug. 27, 2009) (plaintiff's complaints regarding food, including being served a raw chicken heart, did not establish an Eighth Amendment violation).

### iii.    Cleanliness

Finally, Plaintiff attests that he and other inmates "have even found dead bugs in their food." ECF No. 1 at ¶ 10. Ryshema Davis reports that in her role as nutritionist in Food Services with SCDC, she has not received any complaints or reports of bugs in food at PCI or LCI for the time covered by Plaintiff's Complaint. ECF No. 36-5 at ¶ 15.

Nevertheless, resolving the dispute in Plaintiff's favor, he has not shown a constitutional violation by stating that dead bugs have been found on occasion. "[T]he existence of a bug in plaintiff's food does not, standing alone, represent a serious deprivation of a basic human need."

11

*Atkins v. Glaser*, No. 1:18-CV-354-LMB-TCB, 2022 WL 1085000, at *6 (E.D. Va. Apr. 11, 2022) (citing *Belfield v. Stolle*, No. 3:13-cv-234, 2015 WL 1526212, at *3 (E.D. Va. Apr. 3, 2015) (finding that a plaintiff who alleged that his food trays "arrive[d] [w]ith bugs on the trays from the kitchen every morning" failed to state an Eighth Amendment claim upon which relief could be granted)); *see also Wassil v. Casto*, No. CIV.A. 3:13-06020, 2014 WL 988479, at *11 (S.D.W. Va. Mar. 12, 2014) (finding presence of dead rodent in plaintiff's food was revolting but did not objectively constitute a denial of the minimal civilized measure of life's necessities).

"Occasional short-lived problems with food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment." *Marshall*, 2009 WL 2858999, at *6. Here, even as attested to in Plaintiff's Complaint, he refers to the appearance of bugs in his food as isolated incidents, and he has only included one grievance referencing the appearance of a bug during the time covered by his Complaint. *See* ECF No. 43-2 at 44 (reporting dead bug in rice on May 21, 2024); *see also* ECF No. 46 (Step 1 Grievance of same incident). Though Plaintiff indicates in his grievance that this instance was not the first time he had bugs in his food, no prior incidents appear in the record before the Court.

As such, though certainly unfortunate, none of the circumstances of which Plaintiff complains amount to sufficient constitutional deprivations for purposes of the Court's review.

2. Insufficient Injury or Harm[6]

Even if Plaintiff had shown a sufficiently serious deprivation had occurred, he has not

---

[6] Defendants also seek to dismiss Plaintiff's claims on the basis of his failure to show sufficient injury for purposes of proving damages under the PLRA. ECF No. 36-1 at 20. Though the analysis is not identical, the merits of the challenge are substantively addressed in this section. A review under the PLRA would end in the same result. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e).

12

shown that he suffered any significant physical or mental injury from the challenged condition. *See Strickler*, 989 F.2d at 1381 ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment.").

The Fourth Circuit has held that such "serious or significant physical or mental injury" must be shown for a prisoner to have been "subjected to cruel and unusual punishment within the meaning of the" Eighth Amendment. *White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993) (quoting *Strickler*, 989 F.2d at 1381); *see also Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990) (reiterating that "before pain of a constitutional magnitude can be said to exist, there must be evidence of a serious medical and emotional deterioration attributable to" the challenged condition, and the constitutional harm must be caused by prison officials' deliberate indifference rather than negligence or good faith error (quoting *Shrader*, 761 F.2d at 979)).

Plaintiff's Complaint includes the harms of hunger pains, depression, headaches, loss of energy, and suicidal thoughts due to the challenged conditions. ECF No. 1 at ¶ 10. None of these conditions have been considered to constitute sufficient injury in the Fourth Circuit for purposes of a conditions of confinement claim. *See Henderson v. S.C. Dep't of Corr.*, No. CV 4:17-287-BHH-TER, 2017 WL 2199020, at *4 (D.S.C. Apr. 25, 2017) ("Extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (internal quotation marks and alterations omitted) (quoting *Strickland*, 989 F.2d at 1380 n.3)), *report and recommendation adopted*, No. 4:17-CV-287-BHH-TER, 2017 WL 2180717 (D.S.C. May 18, 2017); *see also Wade v. Robinson*, No. 7:06-cv-00352, 2006 WL

13

1700908, at *1–2 (W.D. Va. June 16, 2006) (finding plaintiff's allegations of headaches, gastrointestinal distress, and exacerbation of allergies and asthma were not sufficiently serious injury to establish conditions of confinement claim). Nor has Plaintiff provided any evidence, beyond his assertions, regarding these conditions or their connection to the food at SCDC. *See Strickler*, 989 F.2d at 1381 n.9 ("The mere incantation of 'physical and mental injury,' of course, is inadequate to survive a motion for summary judgment. At a minimum, an inmate must specifically describe not only the injury but also its relation to the allegedly unconstitutional condition.").

Recognizing this challenge to his allegations, Plaintiff included new allegations involving weight loss in his Response to Defendants' Motion. *See* ECF No. 43-1 at 2–6 ("[Plaintiff] also now offers evidence of weight loss."). He contends that he discovered the weight loss only after conducting discovery and therefore could not amend his complaint to include the new allegations of harm but nonetheless requests that the Court consider the evidence.[7]

Plaintiff cannot add new allegations to his Complaint without amending his Complaint, and he cannot amend his Complaint by way of his Response to Defendants' Motion. "[I]t is well accepted that a plaintiff, even one proceeding pro se, cannot amend his complaint by asserting new claims in an opposition brief to a motion for summary judgment." *Sarno v. Wilson*, No. 1:17-CV-953-LO-JFA, 2018 WL 3638079, at *3 n.2 (E.D. Va. July 27, 2018), *aff'd*, 755 F. App'x 321 (4th Cir. 2019).

Furthermore, as Defendants note, even if the Court were to consider this new allegation of harm, notwithstanding that it was not properly brought before the Court, a review of the evidence

---

[7] It is not entirely clear to the undersigned why Plaintiff could not have sought to amend the scheduling order to allow for the filing of an amended complaint, much like he did with the discovery deadline. *See* ECF No. 22.

shows that during the overall period for which Plaintiff alleges such harm, he actually gained, rather than lost, weight. *See* ECF No. 44 at 3–4 (citing ECF No. 44-1 at 1–7). Indeed, the evidence shows that Plaintiff gained approximately fifty pounds from April 25, 2024, to February 5, 2025. *Contrast* ECF No. 44-1 at 1, *with id.* at 7; *see also* ECF No. 43-2 at 5 (Plaintiff's weight on September 17, 2025, recorded at 252 pounds). However, this evidence does not show Plaintiff's weight during the relevant period encompassed by Plaintiff's Complaint, and Plaintiff has not produced any evidence showing the weight loss alleged. Even so, to the extent Plaintiff relies on the record evidence to support his contention of harm, it does not. Plaintiff explains the weight gain shown in these records by reference to medications and receipt of food from other inmates, and he requests that the Court subpoena records to show that his family put money on another inmate's account to help him buy food. ECF No. 51 at 1–2. The burden is on Plaintiff, not this Court, to supply the evidence to support his claims. Plaintiff has not done so here.

Even if the evidence did in fact show that Plaintiff lost weight during the relevant period, however, there is no evidence of a connection between the food provided and the weight loss. *See Balcar v. Smith*, No. 3:16-CV-P428-DJH, 2017 WL 380931, at *3 (W.D. Ky. Jan. 26, 2017) ("To show inadequate nourishment, courts typically require evidence of a connection between the challenged diet regimen and substantial weight loss."), *aff'd*, No. 17-5159, 2017 WL 3613479 (6th Cir. July 17, 2017). In the absence of any actual injury, Plaintiff has not shown a sufficiently serious deprivation that would constitute cruel and unusual punishment. *See Witschi v. N.C. Dep't of Pub. Safety*, No. 1:14-CV-68-FDW, 2014 WL 3735135, at *2 (W.D.N.C. July 29, 2014) (finding no Eighth Amendment claim despite plaintiff's allegation that he was not being fed a sufficient diet that complied with medical orders because he did not allege facts suggesting that his health had deteriorated as a result of his diet regimen); *Kemp*, 2013 WL 4874972, at *9 (holding that

15

plaintiff's "allegation of a seventeen-pound weight loss does not state a cognizable claim" of inadequate nourishment); *cf. Escalante*, 2011 WL 3107751, at *14 (finding that claim of long-term weight loss of thirty-four pounds combined with dizzy spells resulting from allegedly inadequate nutrition are sufficient to show the deprivation of a basic human need or serious or significant injury).

Plaintiff has not shown a serious injury or harm from the issues he has experienced with the food from SCDC, and his claims could therefore be dismissed on this basis as well.

### B. Subjective Component: No Deliberate Indifference to Plaintiff's Needs

Even if Plaintiff had established the objective component of his claims, he would still need to satisfy the subjective component by showing that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" *Strickler*, 989 F.2d at 1380 (quoting *Wilson*, 501 U.S. at 298). "Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk." *Wright v. Hansen*, No. 8:17-CV-2805-DCC-JDA, 2020 WL 6265233, at *4–5 (D.S.C. May 28, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 836–38 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")), *report and recommendation adopted*, No. 8:17-CV-02805-DCC-JDA, 2020 WL 5652140 (D.S.C. Sep. 23, 2020).

Plaintiff asserts that he has satisfied the subjective component of his claims because he has shown that "Defendants were well aware of not only his complaints about the food portions but also other inmates' complaints yet they have done nothing to address the issue." ECF No. 51 at 2.

Plaintiff has provided evidence that at least suggests that Defendants were on notice of his dissatisfaction with the food. This evidence does not, however, establish that Defendants were aware of a serious risk of harm that could result from the conditions of which Plaintiff and the other inmates may have complained to Defendants. Indeed, in the responses to many of the requests to staff, Plaintiff is informed by various staff members that the meals are given in compliance with SCDC standards and policies and that the portions are being closely monitored and temperatures are being tested as meals are distributed. *See* ECF No. 43-2 at 28–67. Plaintiff attests in his Complaint that Defendants Duffy, Cloud, Earley, Jackson, and Watts were on notice because of his grievances, ECF No. 1 at ¶¶ 8–10, but Plaintiff's requests to staff members read as complaints about portion size, rather than notice of an actual harm. Though he invokes the term "cruel and unusual punishment" on numerous occasions, the use of this phrase, in the absence of further information, would not suggest to those in receipt of these requests that Plaintiff was at serious risk of harm. Indeed, Plaintiff was seen by medical providers at PCI based on his complaints of being underfed, and the officials noted no health concerns. ECF No. 43-2 at 3.

Notwithstanding the inability to establish knowledge of a serious risk of harm on the part of any SCDC staff member, Plaintiff has not shown that the Defendants in this case were *involved* in the alleged constitutional deprivation, as he has not shown that any Defendant disregarded any such deprivation or that each Defendant had responsibility for the food decisions being made at their respective institutions. *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (noting deliberate indifference requires that a prison official *know of and disregard* the objectively serious condition or deprivation). There is no evidence of record that any Defendant was deliberately indifferent to a basic human need. Because Plaintiff has not established an Eighth Amendment claim against Defendants based on the portions, temperature, or cleanliness of the food served at

17

his institutions, Defendants are entitled to summary judgment.[8]

## II.     Qualified Immunity

Defendants also argue they are entitled to qualified immunity. ECF No. 36-1 at 17–20. The undersigned agrees.

"When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam) (alteration in original) (internal quotation marks omitted). "Under the well-established analysis, [the officer] would be entitled to qualified immunity from a § 1983 claim unless (1) []he violated a constitutional or statutory right, and (2) the right was clearly established at the time []he acted. And a court is free to address these two prongs in any order it finds prudent." *Belton v. Loveridge*, 129 F.4th 271, 277 (4th Cir. 2025) (internal citations omitted) (citing *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018); *Thurston v. Frye*, 99 F.4th 665, 673 (4th Cir. 2024); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). When considering the defense of qualified immunity, a court should consider "only the facts that were knowable to the defendant officers." *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam). Indeed, a court is to consider whether "a reasonable officer in [Defendants'] position would have known that the conditions they inflicted on [the plaintiff] were unlawful at the time." *Jones v. Solomon*, 90 F.4th 198, 210–11 (4th Cir. 2024)  (internal quotation marks omitted) (granting summary judgment based on officers' entitlement to qualified immunity because they would not have known that their actions violated plaintiff's rights based on clearly

---

[8] For this reason, even if Plaintiff had exhausted his claims regarding food portions, temperature, and cleanliness against Defendants, the claims would nonetheless be subject to dismissal because they fail to rise to the level of a constitutional violation. Though the evidence suggests that Plaintiff may not have sufficiently exhausted his administrative remedies with respect to the specific issues raised in his Complaint, even if he had done so, the ultimate conclusion would remain unchanged. As such, this Report and Recommendation does not reach Defendants' argument for summary judgment based on exhaustion.

established law at the time of the violation).

As set forth in the analysis above, Plaintiff has not established a violation of any constitutional right, which entitles Defendants to qualified immunity. Furthermore, as the cases cited above show, no clearly established law would have put Defendants on notice that any of the actions taken in allowing food to be served in portions or conditions comporting with SCDC policy would violate a constitutional right. Accordingly, Defendants Jackson, Earley, Duffy, Cloud, and Watts are also entitled to qualified immunity, and Plaintiff's claims should be dismissed.

The undersigned does not take Plaintiff's contentions of harm lightly and does not seek to minimize the troubles encountered during his prison sentence. However, the Court is unable to provide relief for circumstances that do not rise to the level of constitutional harms. *See, e.g.*, *Wassil*, 2014 WL 988479, at *11–12 (collecting cases that note occasional problems with food service, though regrettable, were not cognizable Eighth Amendment claims).

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment, ECF No. 36, be **GRANTED**.

**IT IS SO RECOMMENDED**.

The parties are referred to the Notice Page attached hereto.

Molly H. Cherry
United States Magistrate Judge

April 22, 2026
Charleston, South Carolina

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

20